192 Ill. App.3d 461 (1989)
548 N.E.2d 821
In re ESTATE OF CLAIRE C. PARKHILL, Deceased (Bank of Pontiac, Ex'r, et al., Petitioners-Appellants,
v.
Barbara C. Highland et al., Respondents-Appellees).
No. 4-89-0133.
Illinois Appellate Court  Fourth District.
Opinion filed December 28, 1989.
*462 Harvey S. Traub, of Traub & Weeks, Ltd., of Fairbury, for appellant.
Brown, Hay & Stephens, of Springfield (Edward J. Cunningham and Harvey M. Stephens, of counsel), for appellees.
Order affirmed.
JUSTICE McCULLOUGH delivered the opinion of the court:
The decedent Claire C. Parkhill died April 11, 1988. The circuit court of Livingston County admitted her will to probate on April 25, 1988. Homer filed a petition on September 20, 1988, requesting that court to fix a surviving spouse's award for him. After a hearing, the court entered a comprehensive order on November 14, 1988, fixing the award in the minimum sum of $10,000. Petitioner has appealed, the only issue being whether the trial court erred in not awarding a surviving spouse's award greater than the minimum where the estate was in excess of $1 million.
In providing for a surviving spouse's award, which is a second-class claim under section 18-10 of the Probate Act of 1975 (Act) (Ill. Rev. Stat. 1987, ch. 110 1/2, par. 18-10), section 15-1(a) of the Act at times relevant here stated that such a person shall be allowed
"such a sum of money as the court deems reasonable for the proper support of the surviving spouse for the period of 9 months after the death of the decedent in a manner suited to the condition in life of the surviving spouse and to the condition of the estate and such additional sum of money as the court deems reasonable for the proper support, during such period, of minor and adult dependent children of the decedent who reside with the surviving spouse at the time of decedent's death." (Ill. Rev. Stat. 1987, ch. 110 1/2, par. 15-1(a).)
We are involved here with the determination of a surviving spouse's award under very unusual circumstances.
This case concerns a situation where two couples had been good friends, and one wife and one husband died. Sometime thereafter the survivors married but the wife died 15 1/2 months thereafter. The husband was a physician who had lived well but entered this marriage with a negative net worth. The decedent was wealthy and had made substantial gifts to the husband by cash payments and placing property in joint tenancy with right of survivorship in him. The trial court found that joint tenancy assets, consisting almost entirely of assets *463 previously owned by the decedent passing to the surviving spouse, included:

 A. City Bank of Bloomington (bank account) $ 51,799.16
 B. Pontiac National Bank (bank account) $ 51,152.15
 C. Commonwealth Edison Shares $ 18,198.75
 D. MFS Municipal Bond Trust Shares $ 82,974.14
 E. MFS High Yield Municipal Bond Trust $ 45,147.14
 TOTAL $ 249,271.34
 ============

In addition to the liquid assets, the surviving spouse as joint tenant now owns a $40,000 to $50,000 motor home and a residence valued at over $100,000 but less than $180,000. His substantial debts, except one to his mother, have been paid. The surviving spouse's negative net worth at the time of marriage is now a significant positive net worth.
In reaching its decision, the circuit court placed great emphasis upon the enhancement of petitioner's financial situation (1) upon marrying decedent; and (2) after her death by virtue of the joint tenancy property and the interests he received under her will. The court concluded no need existed to "supplement [petitioner's] assets in order to provide a proper level of support." In considering petitioner's "condition in life," the court concluded petitioner had enjoyed the same high standard of living before his marriage to the decedent as he had during that marriage, and he was continuing to do so after her death. The court concluded petitioner needed no further money to alleviate his financial condition.
Homer's principal contention in asserting error is that he and Claire lived a lavish life-style, travelling, shopping and spending all of their earned income. The evidence presented was principally that of Homer, an accountant, and exhibits of cancelled checks. Homer's testimony as to present expenses indicated spending $220 to $300 per month in restaurants, maid service of $40 to $50, and a one-time clothing expense of $400. When asked concerning his budget or monthly expenses, he responded, "I can't because its changeable from month to month." As to vacations, "I don't have any plans right now in mind, but I know that I need to get away from a lot of this business stuff and I hope to be on a vacation in the next couple of months."
Homer's testimony was of little help to the trial court. He knew little about his expenses, what needed to be paid, or what was paid. The record does show in the four-month period preceding Claire's *464 death, a loan of $10,455 was paid, and an indebtedness on a home owned by him ($7,995) was paid. He testified he took care of the finances because of Claire's condition of ill-being. The respondents argue that during this period of time some $110,000 in debts were paid.
 1 The trial court properly took into consideration the nonprobate property received by Homer; the provisions of Claire's will; Homer, in a 15-month period, went from being a high-living doctor with a substantial debt to a debt-free high liver, with joint tenancy assets of at least $350,000, a one-third interest in a $1.3 million estate, and the income for life in the balance.
 2 The principal purpose of section 15-1 is to provide a surviving spouse with a sum of money to allow him to live for nine months in the manner he has been accustomed and to remove as many financial worries as possible during a difficult period.
 3 There is not a plethora of cases in Illinois on the widow's award. In giving meaning to the terms "reasonable," "proper support," "condition in life of a survivor," and "condition of the estate," it is proper for the trial court to look at the totality of the circumstances. Here it is clear there is no need for "support" in excess of the minimum; the "condition in life of a survivor" is a mass of substantial joint tenancy assets derived through the generosity of the decedent; the "condition of the estate," provides a one-third interest in $1.3 million and a life estate in the balance.
In re Estate of Caffrey (1983), 120 Ill. App.3d 917, 922, 458 N.E.2d 1147, 1150, states:
"The plain meaning of the statute does not support the restrictive view advocated by respondent. We do not believe the legislature intended a rigid and technical limitation to the court's consideration of the assets left by the decedent in determining the support necessary for the surviving spouse. In our view the court may properly consider nonprobate assets which the surviving spouse has received."
In In re Estate of Handmacher (1965), 60 Ill. App.2d 376, 208 N.E.2d 604, the decedent and his widow had lived together since their marriage and he was her only means of support. As stated in Handmacher, the statute "does not restrict the widow to the bare necessities of life, but rather provides for a sum of money which will allow her to live in the manner that she has been accustomed to for a period of nine months after the death of her spouse." Handmacher, 60 Ill. App.2d at 379, 208 N.E.2d at 606.
In In re Estate of O'Neill (1982), 104 Ill. App.3d 488, 432 N.E.2d 1111, the evidence did not show that the decedent ever financially *465 supported the claimant after he left her house. In fact, nothing in the record showed the decedent ever financially supported the claimant during their marriage or how their marital life-style was different from her life-style before the marriage and after their separation. As indicated in O'Neill:
"The court in the instant case met this objective. Claimant was living in the same manner as she had been while decedent was alive. The Handmacher court did not specify that a financially independent surviving spouse was required to receive more than the minimum amount." 104 Ill. App.3d at 489-90, 432 N.E.2d at 1112.
As stated in Handmacher with respect to the legislation on spouse's award:
"This statute was designed to help alleviate the widow's problems by removing as many of her financial worries as possible during this difficult period." (Handmacher, 60 Ill. App.2d at 380, 208 N.E.2d at 606.)
We agree that the spouse's award should be liberally construed. The similarity in this case and Handmacher is that the Handmachers had been accustomed to living on a rather lavish scale. In the instant case, Parkhill did not indicate there was a change in life-style, but rather that in fact he maintained the same life-style prior to his marriage to decedent as he did when he was married to the decedent.
The consideration of the joint tenancy property in this case was proper. Homer did not show a need or entitlement to more than the minimum.
 4 The purpose of section 15-1 being to provide support during a difficult period, it is proper for the trial court to consider nonprobate assets received by the surviving spouse. Certainly, the "condition in life of a survivor" is an appropriate consideration. Standing alone, Homer's "condition in life" during this traumatic nine-month period was sufficient basis for the minimum award.
The trial court did not abuse its discretion, and its order setting the minimum award is affirmed.
Affirmed.
SPITZ, J., concurs.
JUSTICE GREEN, dissenting:
As the majority has explained, section 15-1(a) of the Probate Act of 1975 (Act) provides for a surviving spouse award in the amount *466 "the court deems reasonable for the proper support [of the survivor for nine months] in a manner suited to the condition in life [of the survivor] and to the condition of the estate" (Ill. Rev. Stat. 1987, ch. 110 1/2, par. 15-1(a)). The parties do not dispute that absent insolvency of the estate, the level of living to which the survivor is to be aided to continue is that which he or she enjoyed during the marriage. However, neither the foregoing language nor the case law makes clear the extent to which the ability of the survivor to continue that life-style from other resources negates entitlement to an award. This puts a very difficult burden on the circuit court. Perhaps the recognition of the difficulty is one of the reasons why, in all cases cited by respondents, the reviewing courts have affirmed the action of the circuit court.
The majority's decision appeals to a sense of fairness and is difficult to criticize. Nevertheless, I agree with the petitioner that some improper factors were considered in determining the amount of the award. For that reason, and because I deem a need to exist to clarify the operation of section 15-1(a), I write this dissent. I would reverse the order fixing the award and remand for reconsideration.
My major dispute with the majority concerns the interpretation of the opinion in the case of In re Estate of Caffrey (1983), 120 Ill. App.3d 917, 458 N.E.2d 1147. There, a husband died leaving a probated estate believed to be worth $325,147. The court initially allowed a surviving spouse's award in the sum of $50,000 and surviving children's awards totalling $25,000. Then a claim was filed in an amount which brought the solvency of the estate in question. The court heard evidence that the widow had received life insurance proceeds of $326,813, an IRA in the sum of $66,873, a $5,000 death benefit, joint tenancy stock valued at $10,000, and residential property worth $69,607. The children had also received substantially more nonprobated assets. Upon the request of a creditor, the court then reduced the surviving spouse's award to $20,000 and the children's awards to $10,000. The widow appealed, but the appellate court affirmed.
In Caffrey, the trial court did consider the nonprobated assets which the widow and children would receive as a result of the decedent's death, and the appellate court held this was proper. After considering not only the paragraph from that case cited by the majority but also the paragraphs preceding and following it, I deem the determination that nonprobated assets may be considered to be limited to circumstances involved in that case. The most notable circumstance there was the dubious solvency of the decedent's estate.
The three paragraphs I have described seem to contain the rationale *467 of the court in reaching its decision. They state:
"The parties have represented that this is a case of first impression. We note initially that when requesting the widow and children's award of $75,000 counsel represented that the award would not jeopardize the estate. Counsel also did not present the court with any written documents on the condition of the estate. If there had been full disclosure of the facts the court would have been better able to make an award based upon the condition of the estate.

The plain meaning of the statute does not support the restrictive view advocated by respondent. We do not believe the legislature intended a rigid and technical limitation to the court's consideration of the assets left by the decedent in determining the support necessary for the surviving spouse. In our view the court may properly consider nonprobate assets which the surviving spouse has received.

We are not attempting to prevent the respondent from obtaining an adequate widow's award in compliance with the statute. We hold, however, that under the facts of this case, the trial court was correct in considering nonprobate assets which the widow received in its determination of the sum necessary for her proper support." (Emphasis added.) Caffrey, 120 Ill. App.3d at 921-22, 458 N.E.2d at 1150.
As the majority has shown, the middle paragraph in Caffrey seems to make an unqualified statement that nonprobate assets may be considered. However, the first paragraph explains that the large original award, which the court did not criticize, was made at a time when the solvency of the estate was unquestioned. The court recognized the condition of the estate was the reason for the need to reduce the awards. Then, in the third paragraph, the court states the consideration of the nonprobate assets was correct "under the facts of this case." The facts of the instant case differ from the facts in Caffrey most sharply in that here the condition of the estate was solvent and fully able to satisfy the claims of creditors.
No case has held a surviving spouse is entitled to only a minimum award if the assets received from the solvent estate of a decedent are sufficient to support the survivor for nine months, nor that only the minimum should be awarded if the income from those assets will provide that support. In Strawn v. Strawn (1870), 53 Ill. 263, a widow renounced her husband's will and took her allowed share of an estate appraised at a value of $500,000. The executor appealed the award of special dower (widow's award) which constituted a claim superior to *468 that of creditors. The executor contended the award was excessive. The award consisted of some $1,600 worth of furniture and $1,590 in cash. The supreme court affirmed, looking at the needs of the surviving spouse without reference to the considerable estate she had taken. In the case of In re Estate of Handmacher (1965), 60 Ill. App.2d 376, 380, 208 N.E.2d 604, 606, cited by the majority, the court stated: "The fact that the widow has independent means will not bar her from an award."
No case has been called to our attention which holds that the adequacy of assets owned by the surviving spouse prior to the decedent's death or the adequacy of income from those assets to enable the survivor to continue the previous life-style negates the ability to receive more than a minimum surviving spouse's award. The Caffrey court stated that technicalities should not be used to determine property to be considered in deciding upon the amount of a widow's award. Petitioner's property received from joint tenancy here differs from most of the nonprobate assets in Caffrey in that here, his joint interest in real estate was obtained in shuffling of properties some of which he had contributed. Thus, here, the court was in effect considering assets he had owned before the decedent's death. Under the circumstances of the case, I consider the court to have erred in considering petitioner's joint tenancy real estate which passed by operation of law entirely to him upon the death of the decedent.
The majority also relies on the case of In re Estate of O'Neill (1982), 104 Ill. App.3d 488, 432 N.E.2d 1111, where the court indicated that Handmacher did not require the award of more than a minimum award to a spouse who had financial independence. However, that was dictum stated in a case where nothing indicated the decedent had been supporting the survivor, and the survivor had left the home of the decedent prior to the death. Here, the surviving spouse was receiving substantial support from the decedent and had never left the marital domicile after the marriage.
No case has been called to our attention holding the length of the marriage is a proper consideration for determination of a surviving spouse's award. I do not deem O'Neill to so hold. I do not consider the length of marriage to be related to the sum of money necessary to maintain a life-style. Accordingly, the court should not have considered it either.
The present surviving spouse's award was originally an award for widows. It originated at a time when most women were not employed for money outside the home, and most family property was owned by the male who had supported the family. A strong argument can be *469 made that the award has little use where, as here, the survivor is a person who has been employed and has property of his own. However, if the existence of the surviving spouse's award continues, clarification is needed to determine who is entitled to it. Clearly, at present, it is not being awarded only to those who need it. Petitioner's contention he is not receiving the same consideration others in his situation have received is understandable.
In any event, I would reverse and remand here for a reconsideration without reference to the nonprobate property or the length of the marriage.